IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILLIE GILBERT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  05 C 3139 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| R. JAMES NICHOLSON, Secretary, ) | |
| U.S. Department of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lillie Gilbert filed a two-count complaint against defendant R. James Nicholson, Secretary of the U.S. Department of Veterans Affairs ("VA"), alleging disability discrimination in violation of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act") (Count I), and constructive discharge (Count II). Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). For the reasons set forth below, defendant's motion is denied as to Count I and granted as to Count II.

## FACTS[1]

Plaintiff was hired by defendant in 1982 as a respiratory therapist at the Lakeside VA Hospital in Chicago, Illinois. Her duties included monitoring ventilators, conducting breathing treatments for patients, performing blood gas analyses, and engaging in other types of patient respiratory care.

---

[1] Unless otherwise noted, the facts are taken from the parties' L.R. 56.1 statements and attached exhibits.

In 2003, defendant closed the Lakeside facility and transferred plaintiff to Jesse Brown Medical Center. The functional statement for plaintiff's position at Jesse Brown listed the following tasks as "Major Duties and Responsibilities": (a) participating in cardiopulmonary resuscitation ("CPR"), including initiation of mechanical ventilators and chest compressions if necessary; and (b) proper care of respiratory equipment, including the transportation and storage of therapeutic gases. The functional statement also listed plaintiff's "Physical Demands" as: (a) standing and walking for prolonged periods of time, and (b) frequent bending, reaching, stooping, and stretching to set up and take apart respiratory equipment, position patients, and push and pull moderately heavy objects such as ventilator equipment. The statement also indicated that respiratory therapists perform work in intensive care units ("ICUs") and wards of the hospital and work in all types of hospital environments, including with patients with severe respiratory disorders.

When plaintiff moved to Jesse Brown, she assumed the duties included in the functional statement. Plaintiff claims, however, that respiratory therapists were required to move ventilators (pieces of wheeled equipment weighing more than 100 pounds) only when assigned to the hospital wards, not the ICUs. Defendant claims that respiratory therapists at Jesse Brown, including plaintiff, were also required to move oxygen cylinders because Jesse Brown did not have a department that handled such equipment. Plaintiff agrees that respiratory therapists were required to obtain oxygen cylinders, which are approximately two to three feet tall and weigh no less than thirty pounds, from a storeroom or dock, lift them into a "grocery cart"-like basket, and push the basket of cylinders to an assigned floor or ward to ensure that there were at least six oxygen cylinders on each floor of the hospital. Plaintiff maintains, however, that Jesse Brown

had employees who worked as "transporters" of patients from ward to ward, and that these transporters moved patients' oxygen cylinders as needed. Plaintiff also asserts that Jesse Brown employed equipment technicians to clean and store the equipment and transport it to the wards, and that nurses typically moved oxygen cylinders when their patients were moved.

In October 2003, approximately two months after transferring to Jesse Brown, plaintiff suffered low back pain after lifting oxygen cylinders. As a result, plaintiff spent the weekend and an additional two days in bed. Plaintiff alleges that she has had an undiagnosed back condition for twenty to thirty years, but the condition did not affect her work until the October 2003 incident. Plaintiff had some physical therapy approximately five years before her transfer to Jesse Brown, but she never had surgery, visited a chiropractor, or took medication for the condition. Plaintiff alleges that her back condition affects her ability to lift, bend, sit, stand and walk. Plaintiff claims that she has pain when lifting heavy objects and does not lift five- or ten-pound bags without assistance, and that she limits the amount of weight she places in grocery bags when shopping so that she can carry them to and from her car. With respect to bending, plaintiff maintains that she can vacuum, mop and clean only with pain or limitation. Plaintiff alleges that she cannot sit on benches without backs and must have support for her back. She also claims that she can walk for only five to ten minutes without resting and can stand for only fifteen minutes without support.

After approximately four days of rest, plaintiff returned to work, where she could not lift oxygen cylinders or push ventilators without aggravating her lower back pain. Plaintiff asserts that she learned how to position her body to complete certain tasks, but that she could not bend over to bed level.

On November 22, 2003, plaintiff sent an e-mail to her supervisor, Larry Barlow, which stated, among other things: (a) plaintiff realized that moving oxygen cylinders was part of her work assignment; (b) she had been experiencing pain in her neck, back and shoulder over the past few months; and (c) she was unable to continue transporting oxygen cylinders. On December 1, 2003, plaintiff met with Barlow and a union representative and told Barlow that she could not transport oxygen cylinders or push and pull ventilators. She also asked Barlow if there was anything he could do to accommodate her, to which Barlow responded that plaintiff would need to provide medical documentation of her condition.

On December 5, 2003, Barlow sent plaintiff a memo summarizing the meeting and advising plaintiff that: (a) she was expected to perform oxygen delivery and provision of ventilatory support, because those duties were a large portion of her job as a respiratory therapist; (b) she needed to bring in a statement from her physician if she felt she could not fulfill her duties for medical reasons; and (c) if she had additional comments, she should submit them in writing or inform Barlow orally. Approximately two weeks later, plaintiff brought two documents from her physician, Dr. Charlotte Harris, stating that plaintiff could not lift more than twenty pounds for the next two months and that she had prescribed four sessions of physical therapy. Dr. Harris did not prescribe surgery or other corrective measures.

After plaintiff informed management of her inability to move oxygen cylinders and ventilators, defendant relieved plaintiff of those duties and assigned her to work only on the hospital floors, rather than the ICU.[2] Plaintiff received a "fully satisfactory" performance

---

[2]Despite the changes to plaintiff's responsibilities, Barlow testified that no light duty assignments were available in the respiratory care department. Carol Nealy, another respiratory
(continued...)

evaluation while working only on the hospital floors. As a respiratory therapist, plaintiff typically worked alone on the floors, so when plaintiff required help moving an oxygen cylinder or ventilator, another respiratory therapist was required to leave his or her assignment, assist plaintiff, and return to his or her assignment. Defendant did not assign a "floater" therapist to assist other employees with their assignments. Additionally, because plaintiff no longer worked in the ICU, the other respiratory therapists were assigned to the ICU on a more frequent basis. Plaintiff received no complaints from fellow employees about changes to their schedules based on her need to work outside the ICU.

On January 22, 2004, plaintiff again met with Barlow to discuss her condition. On January 23, 2004, Barlow issued a memo to plaintiff stating:

> 1. The purpose of this memo is to provide a summarization of our discussion on January 22, 2004. During this conversation you stated that because of back problems, you could no longer lift oxygen cylinders, transport patients, stand for long periods of time, move ventilators to and from the patient's bedside, or perform CPR at "Code Blue" calls.
>
> 2. I am sympathetic to your physical limitation, but the department is unable to accommodate you. Respiratory Therapy is a physically demanding job. The work requires standing, walking, bending, and the ability to move moderately heavy objects.
>
> 3. I cannot ask other personnel to do their job and additionally assist you in your job also. I am referring you to Employee Relations and they may be able to assist you.

---

[2](...continued)
therapist, had been placed on "limited duty" after suffering an on-the-job injury. Her alternate assignment entailed no pushing of ventilators, no lifting of oxygen tanks, no work assignments in the ICU, and no code blue CPR work. Ms. Nealy remained on "limited duty" for more than one year.

At some point in January 2004, plaintiff advised management that she planned on retiring in June 2004. She also made a request for a light duty assignment. On January 26, 2004, Barlow sent a memo to Carol Martin, an Employee Relations Specialist in the Great Lakes Human Resource Management Service ("GLHRMS"),[3] indicating that he could not accommodate plaintiff's physical limitations and requesting that she be reassigned. Martin made no effort to discuss with Barlow whether any specific accommodation could be implemented to allow plaintiff to continue her work as a respiratory therapist. When asked at her deposition why she failed to do so, Martin stated that she did not "go looking for trouble." She also stated, "I don't go looking for extra work. We're busy enough." Martin never submitted Dr. Harris's report concerning plaintiff's physical limitations to the staff conducting the job search, and she did not permit plaintiff or her physician to discuss accommodations and duties of alternate positions.

On February 6, 2004, although he had already contacted Martin, Barlow issued another memo to plaintiff indicating that he needed specific medical documentation to evaluate her request for light duty. Plaintiff provided him with a letter from Dr. Harris, dated February 12, 2004, which stated that plaintiff suffered from spinal stenosis, a condition from which she would

---

[3]Ms. Martin represents defendant before the MSPB and EEOC. She acknowledged that pursuant to VA Directive 2001-070, dated November 19, 2001, it is VA "policy to establish effective written procedures to facilitate the provisions of reasonable accommodation, and to prohibit discrimination based on handicap." Jesse Brown had no written procedures to process employee requests for accommodation at all times relevant to plaintiff's claim. Martin drafted such a policy on or about February 2, 2004, and submitted it to the HR Management Office, but the policy was never implemented or adopted by defendant. The VA Directive also required each VA facility to establish a Reasonable Accommodation Committee ("RAC") comprised of a Human Resources Selective Placement Coordinator, an EEO Manager, an Employee Assistance Program Manager, a behavioral services staff member, a practicing line supervisor, a chaplain, and an employee health physician. Martin testified that no such committee existed at Jesse Brown or any of defendant's other facilities within the region.

not recover, and that she should not be required to lift oxygen tanks or move ventilators. Dr. Harris's letter was the first time plaintiff had told defendant that she had been diagnosed with spinal stenosis. On February 17, Barlow issued another memo to plaintiff requesting additional medical information, including "how much weight [plaintiff could] safely push, pull, lift, or hold," to assess "what light duty jobs might be available and suitable." Dr. Harris responded that plaintiff suffered from abnormal reticular pain diagnosed as spinal stenosis and could resume work but not her regular duties because she could not push oxygen cylinders or move ventilators.

On March 24, 2004, Barlow sent a second memo to Martin requesting that plaintiff be reassigned to a different department. Martin did not conduct a job search of any kind for plaintiff after receiving this memo. Martin asked Tarolyn Baker, a Human Resources Specialist in the Employee Assistance Staffing Section, to conduct a job search for plaintiff in April 2004, but Martin then asked Baker to cancel the job search allegedly because plaintiff planned to retire.

In June 2004, plaintiff advised defendant that she did not wish to retire, but instead wanted to work another nine months. Defendant asserts that plaintiff wanted to continue working because she needed to be employed to obtain financing for a real estate deal. Plaintiff admits that she needed to be employed at the time of the real estate closing, but that she mentioned nine months only as an offer and intended to continue working as long as she was "physically able."

On June 4, 2004, Barlow gave plaintiff a memo advising her that: (a) her department could not continue to accommodate her physical limitations; (b) Barlow could not continue to ask other personnel to perform plaintiff's duties in addition to their own; (c) he was requesting

7

that plaintiff be removed from the department; and (d) he was referring her to Martin. The only other option Barlow offered to plaintiff in the letter was disability retirement.

After receiving Barlow's June 4 memo, plaintiff contacted Martin and stated that she wanted to extend her retirement date. When plaintiff told Martin of her intention to continue working, Martin told plaintiff she was "disappointed" and informed plaintiff that if she did not retire, she would take steps to remove her from employment. Martin also said to plaintiff, "You [are] old enough. You got the time. You got the age. Just go ahead and retire." Martin also told plaintiff, "You've been a respiratory therapist all these years, and what else do you know. You don't know nothing else to do." Martin never asked plaintiff about her educational background, work experience, or request for reassignment, and she did not disclose any vacancies that were available at the hospital.

Martin requested that Tarolyn Baker conduct a search for jobs available at Jesse Brown for which plaintiff was qualified and that were within her physical capabilities. Martin testified in her deposition that she requested the job search because plaintiff had many years of service and she wanted to be able to justify a potential removal to the Merit Systems Protection Board.

Baker conducted a search, which identified two jobs for which plaintiff was rated "qualified," but both jobs were described as outside her physical limitations. When Baker performed the search, however, she mistakenly used the work and education history, skills section, and physical restriction information of an employee other than plaintiff. Additionally, Baker conducted a search only for positions at Jesse Brown, because she was told by her supervisor that when an employee has a physical limitation preventing her from performing her current job duties, GLHRMS performs a vacancy search only at the employee's current duty

8

station. Plaintiff was therefore considered for job vacancies only at Jesse Brown, despite potential vacancies at other area VA hospitals. Baker also testified that when staffing specialists conduct a job search for an employee with a physical limitation, they are not authorized to consider whether any job modification or accommodation would allow the employee to perform the duties of any vacant position. Plaintiff alleges that she identified numerous positions for which she was qualified that were vacant between January and September of 2004. Plaintiff maintains that these positions were not disclosed to her prior to her removal from employment. Additionally, Baker testified that she believed plaintiff was likely qualified to perform the duties of Medical Supply Tech, Patient Services Assistant, and Nursing Assistant.

On July 26, 2004, Barlow sent plaintiff a letter proposing her removal for non-disciplinary reasons because of her inability to perform the full range of duties of a respiratory therapist. Plaintiff and two union officials met with Paula Steward, Barlow's supervisor,[4] to determine if plaintiff could remain in her position or an alternate position for nine months, but Steward told them that plaintiff could not remain in a respiratory care position and that no position was found for her elsewhere in the hospital. Steward made no offer to reassign plaintiff and did not offer any accommodations to allow her to remain in her current position. Steward told plaintiff that if she did not agree to retire, she would be terminated. Plaintiff stated during her deposition that Steward told her there were three employees "in there with a disability" and she "had to do something." After this meeting, plaintiff submitted a written statement to

---

[4] Ms. Steward first became aware of plaintiff's physical limitations on or about February 12, 2004, when she received a copy of Dr. Harris's report stating that plaintiff could no longer lift oxygen cylinders or move ventilators because of her spinal stenosis. She also received a copy of Barlow's January 26, 2004, letter requesting that plaintiff be reassigned because of her physical condition, but no one contacted her regarding that request.

9

defendant objecting to "the threat of being terminated because of my disability stated to me by Paula Steward, the director of medical services, on August 13, 2004."

On September 22, 2004, the Director of Jesse Brown sent plaintiff a letter stating that she was being terminated based on her inability to perform the essential duties of her position and that a job search failed to reveal any qualifying alternative positions meeting her physical restrictions. Plaintiff was terminated effective September 28, 2004; she later submitted paperwork making her retirement retroactive to that date.

## **DISCUSSION**

Under Fed. R. Civ. P. 56(c), a court should grant a motion for summary judgment if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotrex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

Count I: Disability Discrimination

Plaintiff claims disability discrimination in violation of the Rehabilitation Act.[5] The Rehabilitation Act prohibits any recipient of federal funds from discriminating against a qualified individual solely on the basis of his or her disability. To establish a prima facie case of disability discrimination under the statute, a plaintiff must show that: (1) she suffers from a disability; (2) she is qualified to perform the essential functions of the position, with or without a reasonable accommodation; and (3) she has suffered an adverse employment action as a result of her disability. Jackson v. City of Chicago, 414 F.3d 806, 810 (7th Cir. 2005). The Rehabilitation Act requires that courts use the standards and provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), in determining whether a plaintiff has established a prima facie case of disability discrimination.

*Plaintiff's Disability*

Defendant maintains that plaintiff is not entitled to the protections of the Rehabilitation Act because she is not a qualified individual with a disability and therefore cannot meet the first prong necessary to establish a prima facie case of disability discrimination. Under the ADA, a qualified individual with a disability is "an individual with a disability, who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff has a disability under the

---

[5]Plaintiff also claims that defendant violated Exec. Order 13164, 65 Fed. Reg. 46,565 (July 26, 2000), which requires federal agencies to establish procedures to facilitate the provision of reasonable accommodations to employees with disabilities. Plaintiff, however, may not base a cause of action on this order, because it specifically states that it "does not create any right or benefit, substantive or procedural, enforceable at law or equity against the United States, its agencies, its officers, its employees, or any person." Id.

11

ADA if she: (1) has a physical or mental impairment which substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2); Nawrot v. CPC Int'l, 277 F.3d 896, 903 (7th Cir. 2002).

Because plaintiff asserts all three alternative definitions, they will be discussed in turn. First, plaintiff claims that she has a physical impairment which substantially limits one or more of her major life activities. To make such a claim, plaintiff must show that: (1) her condition constitutes an impairment under the ADA; (2) the activity she claims is impaired constitutes a major life activity; and (3) the impairment substantially limits the performance of that major life activity. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 797 (7th Cir. 2005).

An impairment is "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal...cardiovascular...or any mental or psychological disorder..." 29 C.F.R. § 1630.2(h). Under this definition, plaintiff's well-documented spinal stenosis qualifies as a physiological condition affecting her musculoskeletal system.

Plaintiff must next establish that the activities she claims as limited are major life activities. Major life activities include basic life functions, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); Knapp v. Northwestern Univ., 101 F.3d 473, 479 (7th Cir. 1996). Plaintiff identifies the major life activities limited by her physical condition as: lifting, bending, sitting, standing, walking, and working. Such activities are major life activities under the ADA and the Rehabilitation Act.

Finally, plaintiff must establish that she is substantially limited in the performance of these major life activities. An impairment is "substantially limiting if it significantly restricts the duration, manner, or condition under which an individual can perform a particular major life activity as compared to the average person." 29 C.F.R. § 1630.2(j); Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 675 (7th Cir. 1998). With respect to the major life activities of lifting, bending, sitting, standing, and walking, plaintiff has not demonstrated that she is substantially limited. Although she has some difficulty with lifting and bending, she is still able, as noted by her doctor, to lift items under twenty pounds, and plaintiff testified at her deposition that she can still grocery shop, take care of her home, and work on the hospital floor.

To establish that she is substantially limited in the major life activity of working, plaintiff must show that she is unable to work in a broad class of jobs. 29 C.F.R. § 1630.2(j)(3)(i); Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999). In the instant case, plaintiff has not demonstrated that she is unable to work in a class of jobs; in fact, plaintiff argues that she is incapable of performing a few duties associated only with her specific job. Plaintiff therefore does not meet her burden of establishing that she has a disability because she has not shown that she has a physical impairment substantially limiting a major life activity.

Plaintiff can still show that she is an individual with a disability if she can demonstrate a record of having a disability. Plaintiff can do so by demonstrating that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more life activities." 29 C.F.R. § 1630.2(k). Plaintiff admits that until February 12, 2004, when she provided a letter from her physician stating that she has spinal stenosis, she never informed

13

her employer that she had a physical condition that limited her in any physical capacity.  Plaintiff therefore cannot establish that she had a record of having a disability.

Thus, plaintiff has not established that she has an impairment substantially limiting a major life activity or that she has a record of having such an impairment.  However, plaintiff is still an individual with a disability if she can demonstrate that her employer regarded her as having a disability.  To do so, plaintiff must show that she was treated by her employer as having a substantially limiting impairment, whether or not she did in fact have such an impairment.  29 C.F.R. § 1630.2(l).  Defendant claims that it did not regard plaintiff as having a disability because it did not view her as unable to perform a broad class of jobs, but merely the job for which she had been hired.  Plaintiff's supervisor, however, wrote multiple letters to the Human Resources Department that plaintiff was incapable of performing any jobs within the Respiratory Department.  Further, and perhaps a stronger indication that defendant viewed plaintiff as having a disability, is the fact that plaintiff is listed as having a disability on a document created by defendant dated April 27, 2004.  Additionally, defendant admits that: (1) Carol Martin told plaintiff her only options were to take disability retirement or to be terminated; and (2) Paula Steward told plaintiff that she "had to do something" because there were three employees in the Respiratory Department, including plaintiff, "with a disability."  For these reasons, the court finds that there is a genuine issue of material fact as to whether defendant regarded plaintiff as having a disability.  Plaintiff has therefore met her prima facie burden of showing that she has a disability.

*Reasonable Accommodation*

As discussed above, to make a prima facie case of disability discrimination, plaintiff must also show that she (1) experienced an adverse employment action, and (2) was "otherwise qualified" for her position. Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 862 (7th Cir. 2005). Because defendant does not dispute that plaintiff was terminated, the court will examine only whether plaintiff was "otherwise qualified" for her position.

To establish that she was otherwise qualified for her job, plaintiff must demonstrate that she (1) satisfied the prerequisites for her position, and (2) she could perform the essential functions of her job with or without reasonable accommodation. Defendant does not dispute that plaintiff satisfied the prerequisites, but it maintains that plaintiff could not perform the essential functions of her job, which included pushing, pulling, and moving ventilators and oxygen cylinders, without a reasonable accommodation.

Under the ADA (and therefore the Rehabilitation Act), "an employer must make 'reasonable accommodations' to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.'" 42. U.S.C. § 12112(b)(5)(A); Sears, Roebuck & Co., 417 F.3d at 802. Federal law requires the employer and employee to engage in an interactive process to determine the appropriate accommodation. Id. at 797. If an employee shows that she was not reasonably accommodated and that the employer was the party responsible for the breakdown in the interactive process, the employer will be liable. Id.

In the instant case, plaintiff made her physical limitations known to defendant and requested a reasonable accommodation on numerous occasions. Defendant initially

15

accommodated plaintiff by providing her with a light duty assignment, but defendant then removed plaintiff from light duty (and, in fact, from employment) without any sort of investigation into the reasonableness of the current arrangement. Additionally, Barlow made two requests of Employee Assistance to conduct job searches for plaintiff in an attempt to find her a vacant position, but Carol Martin ignored both requests. Martin also did not permit plaintiff to submit doctor's reports, and she did not discuss accommodations or alternative assignments with plaintiff or her physician. Martin also told plaintiff to retire or face termination, and when she did ultimately order a job search for plaintiff, it was conducted using incorrect information and was never re-conducted. These circumstances create a genuine issue of material fact as to whether defendant is liable for the breakdown in the interactive process to determine whether plaintiff could have received a reasonable accommodation.

Defendant makes what appears to be an "undue burden" argument in claiming that it was not required to keep plaintiff on light duty indefinitely. Although defendant is correct in that assertion (see, e.g., DeVito v. Chicago Park District, 270 F.3d 532, 534 (7th Cir.2001)), it is undisputed that plaintiff received a fully satisfactory performance evaluation while on light duty and that she encountered no complaints whatever from other employees whose assignments were adjusted to accommodate plaintiff's physical requirements. These admissions from defendant constitute a genuine issue of material fact as to whether plaintiff's accommodation was reasonable. The court therefore denies defendant's motion for summary judgment as to Count I.

Count II: Constructive Discharge

Plaintiff claims that she was constructively discharged by defendant through its failure to provide plaintiff with a reasonable accommodation. Constructive discharge, however, occurs when an employee is so mistreated at work that a "reasonable person in that employee's position would be forced to quit. Jordan v. City of Gary, Indiana, 396 F.3d 825, 836 (7th Cir. 2005), quoting Williams v. Waste Mgt. of Illinois, 361 F.3d 1021, 1032 (7th Cir. 2004). Plaintiff does not allege that she quit, and does not dispute that she was fired. For that reason, the court grants defendant's motion for summary judgment as to Count II.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is denied as to Count I and granted as to Count II. This matter is set for a status report February 1, 2007, at 9:00 a.m.

**ENTER:    January 23, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**